IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBERT STEVENSON                                          PLAINTIFF

vs.                              NO: 4:07CV00522BSM

UNION PACIFIC RAILROAD COMPANY                           DEFENDANT

## ORDER

Pending before the court are the motions of third party defendant Seats Incorporated
("Seats") to dismiss and for summary judgment.  For the reasons stated below, Seats is hereby
dismissed as a third-party defendant.

## II. FACTUAL BACKGROUND

Plaintiff filed an action against defendant Union Pacific Railroad ("UP") pursuant to
the Federal Employer's Liability Act, 42 U.S.C. § 51 *et seq.*, ("FELA") and the Locomotive
Inspection Act, 42 U.S.C. § 20701 *et seq.* ("LIA").  Plaintiff alleges that on October 28, 2006,
when he was riding in a locomotive, his seat broke and dropped, causing him serious injuries..

UP answered and filed a third party complaint against Seats Incorporated ("Seats"),
who manufactured and sold the seat to UP which plaintiff alleges malfunctioned.  UP seeks
contribution and indemnification from Seats based on theories of breach of warranty,
negligence, and strict liability in the event UP is found liable to plaintiff.

On November 19, 2008, Seats filed a motion to dismiss. (Doc. No. 52).  Seats filed a
motion for summary judgment on November 21, 2008. (Doc. No. 54).  UP filed its responses
to the motions on December 12, 2008.  (Doc Nos. 63 and 64).  Seats filed a reply to the

motion to dismiss on January 6, 2009. (Doc. No. 67).

## III.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim, the court accepts the allegations in the complaint as true.  The  plaintiff is obligated to provide the "grounds" of its "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*   "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."  *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

## III.  DISCUSSION

Seats contends that UP's claims are preempted by the LIA.  In 1911, Congress enacted the Boiler Inspection Act , which is now known as the LIA, to cover all aspects of locomotive safety.  49 U.S.C. §§ 20701-20703.   The LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. §20701.

In *Napier v. Atlantic Coast Line*, 272 U.S. 605 (1926), the United States Supreme Court held that Congress intended in passing the Locomotive Boiler Inspection Act to occupy the entire field of regulating locomotive equipment, so as to preclude state legislation. The preemption is broad, extending "to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 611. *See United Transp. Union v. Foster*, 205 F.3d 851, 860 (5th Cir. 2000) (LIA completely preempts field of locomotive equipment); *Oglesby v. Delaware and Hudson Ry. Co.*, 180 F.3d 458, 462 (2d Cir. 1999) (LIA preempts common law cause of action against manufacturers); *Scheiding v. Gen'l Motors Corp.*, 993 P.2d 996, 997 (Cal. 2000) (preemptive scope of LIA forecloses state law causes of action against locomotive manufacturers for defective design of their product).

The broad preemptive sweep of the LIA "is necessary to maintain uniformity of railroad operating standards across state lines." *Law v. Gen'l Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997). Congress intended "'that railroads should be regulated primarily on a national level through an integrated network of federal law.' Any state law that undermines this regime is preempted by the [LIA]." *Id.* (quoting *R.J. Corman R.R. v. Palmore,* 999 F.2d 149, 152 (6th Cir. 1993)).

The LIA "imposes on the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate without unnecessary peril to life or limb." *Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 485 (1943) (citations omitted). The Supreme Court has characterized the LIA as an

amendment to the FELA, "dispensing, for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence; and making proof of such violation is effective to show negligence as a matter of law." *Urie v. Thompson*, 337 U.S. 163, 189 (1949). The LIA is not wholly separate from and independent of the FELA, but supplemental to it, facilitating, rather than restricting, employee recovery. *Id.*

The parties agree that the seat in question is an appurtenance. The placement of the seat is governed by federal regulation. 49 C.F.R. § 229.119(a) ("Cab seats shall be securely mounted and braced."). *See Oglesby*, 180 F.3d at 461 (engineer's seat falls within scope of LIA).

An employee who is injured through a violation of the LIA may bring an action under the FELA. The LIA does not confer a right of action. *Law*, 114 F.3d at 912. Furthermore, FELA does not apply to manufacturers. *Id.* Here, plaintiff could not bring an action against Seats under the LIA, or under the FELA, which does not apply to manufacturers.

UP's claim for contribution and indemnification is preempted by federal law if the subject matter of the claim falls within the preempted field. *Id.* at 910. *See also Union Pacific R.R. Co. v. Motive Equipment, Inc.*, 291 Wis.2d 236, 714 N.W.2d 232, 237 (Wis. Ct. App. 2006) Plaintiff alleges that UP negligently

(a) failed to provide the [p]laintiff with a reasonably safe place to work or reasonably safe conditions for work;
(b) failed to provide [p]laintiff with reasonably safe and suitable equipment;
(c) failed to adequately inspect and maintain the locomotive engineer's seat;
(d) allowed a defective and/or unsafe seat to exist on a locomotive engine;
(e) failed to provide cab seats in its locomotive that were securely mounted

-4-

and/or braced in violation of 49 C.F.R. Section 229.119(a);

(f) exposed plaintiff to a personal injury hazard in violation of 49 C.F.R. Section 229.7; and

(g) failed to make adequate and proper daily, quarterly and periodic inspections of the subject locomotive as required by 49 C.F.R. Section 229.21 et al. [*sic*].

Plaintiff further alleged that UP violated the LIA in that it

(a) failed to provide cab seats in its locomotive that were securely mounted and/or braced in violation of 49 C.F.R Section 229.119(a);

(b) exposed plaintiff to a personal injury hazard in violation of 49 C.F.R. Section 229.7;

(c) failed to make adequate and proper daily, quarterly and periodic inspections of the subject locomotive as required by 49 C.F.R. Section 229.21et al. [*sic*]; and

(d) failed to adequately and properly maintain and repair the subject locomotive seats.

(Doc. No. 1).

In its third-party complaint, UP alleges that if it is found to be liable to plaintiff, then plaintiff's injuries are the result of faulty design, materials and/or the manufacture of the seat on which plaintiff was sitting on October 28, 2006.  (Doc. No. 13, ¶ 33).

Seats argues that UP's claim is preempted by the LIA.  UP counters that it is not really seeking to impose a state law standard or to require different or additional equipment on the locomotive. Preemption is not appropriate, according to UP, as its claims would not affect nationwide uniformity of locomotive equipment.  It relies on *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560 (Minn. 2001) to support  its position.  In *Engvall*, the Supreme Court of Minnesota held that a railroad could maintain a cause of action for contribution and/or indemnity against a railroad locomotive manufacturer when the railroad is sued by an

employee under the FELA.   The plaintiff, a locomotive engineer, suffered injury while operating a locomotive manufactured by Elector-Motive Division of General Motors Corporation (GM).   The plaintiff sued Soo Line under FELA and LIA, and Soo Line subsequently filed a third-party complaint against GM, alleging *inter alia*, that the plaintiff's injury was the result of a design flaw in the locomotive's handbrake doubler assembly.   In holding that the railroad had a state-law cause of action for contribution and indemnity, the court found that the plaintiff could have brought a state  common-law action of negligence *per se* against the manufacturer of the locomotive based on a violation of the LIA.   *Id*. at 571. The court held that the negligence *per se* claim based on a violation of the LIA would not have any direct or substantial effect on the field of locomotive design, construction, and material and therefore did not fall within the preempted field.   *Id*. at 570.   The court noted that because no state standard was involved, there was no danger of undermining the goal of nationwide uniformity of railroad operating standards.   *Id*. at 570-71.

A number of courts have rejected the holding of *Engvall* and have  held that "the LIA preempts state common-law tort actions against manufacturers for claims relating to design and construction of a locomotive's parts."   *Roth v. I & M Rail Link, L.L.C.*, 179 F. Supp. 2d 1054, 1060-61 (S.D. Iowa. 2001) (citing cases).   The principle applies whether a direct action is brought against the manufacturer or a claim for indemnity and/or contribution.   *See Union Pacific R.R. Co. v. Motive Equipment, Inc.*, 291 Wis.2d 236, 714 N.W.2d 232, 236  (Wis. Ct. App. 2006)  (noting that the reasoning of the Minnesota Supreme Court reflects adoption of

a public policy unique to Minnesota). *cf. Mehl v. Canadian Pacific Ry., Ltd.*, 417 F. Supp. 2d 1104, 1115(D.N.D. 2006) (noting fact that *Engvall* conflicts with *Norfolk So. Ry. Co. v. Shanklin*, 529 U.S. 344 (2000) may be that Minnesota recognizes violation of statutes or regulation as negligence *per se*).

In *Motive Equipment,* the railroad brought a claim for contribution or indemnity against the manufacturer of a locomotive and of the refrigerator in the locomotive cab claiming that the manufacturers were liable for negligence, strict liability, and breach of warranties.  The Wisconsin Court of Appeals rejected the reasoning of *Engvall*.  The *Motive* court held that "any claim, including one alleging contribution/indemnification, will be preempted by federal law if the subject matter of the claim falls within the preemptive field." *Id*. at 237.  As the railroad's claim involved an alleged design defect of the refrigeration installed on one of its locomotives, the claim fell within the preemptive field.

UP's contribution and indemnification claims are based on Stevenson's underlying claim.  UP can recover from Seats only if Stevenson could have recovered from Seats.  If Seats's claims are preempted to Seats, then UP's claims are preempted as well. *Motive*, 714 N.W.2d at 236.  Here, it is clear that Stevenson's claim would be preempted, as it involves the negligent design of a seat installed on the locomotive.   There is no practical way that the state could be allowed to consider the claim without interfering with the uniform national standards.  "Any claim, whether state or federal, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by railroads." *Roth*,

179 F. Supp. 2d at 1062.

> The [LIA] preempts any state action that would affect 'the design, the construction, and the material' of locomotives.. Imposing tort liability on railroad equipment manufacturers would do just that, by forcing them to conform to design and construction standards imposed by the states. This would transfer the regulatory locus from the Secretary of Transportation to the state courts-a result the [LIA] was clearly intended to foreclose.

*Laws*, 114 F.3d at 911-912 (quoting *Napier,* 272 U.S. at 611)).

UP argues that finding its claims to be preempted is simply unfair, as it would leave UP without a remedy.  The Ninth Circuit in *Laws* rejected a similar argument in finding that the railroad employees' state claims against the manufacturers of locomotive brakes and engines were preempted by the LIA.

> Appellants [the employees] also claim that FELA remedies are inadequate because they can only be asserted against railroad operators, not manufacturers, and will therefore do nothing to deter manufacturers from designing substandard railroad equipment. This ignores the realities of the business world, and underestimates the market's ability to encourage manufacturers to produce safe products. Because railroad operators are liable for any injuries suffered by their employees, they would not buy locomotives, cars and other equipment that fall short of [LIA] standards. Doing so would not only risk FELA damage awards, but would subject railroad operators to fines of up to $20,000 per day for every violation. *See* 49 U.S.C. § 21302. Every railroad operator includes these potential penalties and liability costs in the bottom-line price when deciding whether to purchase from a particular manufacturer. Because locomotives that don't comply with the [LIA] are not, in the end, cheaper than ones that do, there is no market for them. Locomotive manufacturers already have every incentive to comply with federal standards.

114 F.3d at 912.

In finding that the plaintiff's common law claims arising from her fall resulting from a ill-placed handhold on a rail tank car were preempted by the Federal Railroad Safety Act,

the court in *Ouellette v. Union Tank Car Co.*, 902 F. Supp. 5 (D. Mass. 1995) stated:

> While federal preemption often means that there is no remedy available to a claimant, in many instances unfortunately this result is necessary to vindicate the intent of Congress. By pervasively legislating the field of railroad safety, Congress demonstrated its intent to create uniform national standards and to preempt state regulation of railroads. If state common law tort claims were permitted to proceed despite this Congressional intent, on the ground that the purported tortfeasor had in some way allegedly failed to comply with the federal standards, then manufacturers would inevitably be subjected to varying interpretations of the federal regulations in the different states. Inevitably, these tort actions would generate precisely those inconsistencies in railroad safety standards that Congressional action was intended to avoid.

902 F. Supp. at 10.

While the result might seem harsh, "it is the province of Congress, not the judicial branch to address this inequity." *Mehl*, 417 F. Supp.2d at 1120-21 (finding that injured residents claim for damages arising from derailment of freight train and release of anhydrous ammonia preempted by Federal Railroad Safety Act).

Allowing UP to proceed with its claims against Seats would "result in a clear violation of congressional intent to occupy the entire field of regulating locomotive equipment." *Motive*, 714 N.W.2d at 237.  The claims asserted by UP against Seats are preempted by the LIA.

Accordingly, Seats' motion to dismiss (Doc. No. 52 is granted and Seats is hereby dismissed as a party.  The motion for summary judgment (Doc. No. 54) is denied as moot. Stevenson's motion to compel discovery from Seats (Doc. No. 44) is denied as moot.

IT IS SO ORDERED this 20th day of January, 2009.

UNITED STATES DISTRICT JUDGE